UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-192

**JAMES DUNN**     **Plaintiff,**

v.

**KENTUCKY DEPARTMENT OF CORRECTIONS;**
LaDONNA THOMPSON, KDC Commissioner;
Lt. RAYMOND VINSON, Mailroom Supervisor;
LARRY WHITE, Warden, and
SKYLA GRIEF, Program Director     **Defendants.**

**MEMORANDUM OPINION**

Before the Court is the Motion for Summary Judgment of Defendants Kentucky Department of Corrections; LaDonna Thompson, Commissioner of the Kentucky Department of Corrections; Randy White, Warden of the Kentucky State Penitentiary; Lt; Raymond Vinson, Mailroom Supervisor; and Skyla Grief, Program Director. (Docket No. 15.) Plaintiff James Dunn, pro se, did not submit a response within the designated time. Accordingly, this matter is now ripe for adjudication. For the following reasons, Defendant's Motion will be GRANTED.

**Factual Background**

On December 7, 2012, Plaintiff James Dunn, an inmate within the Kentucky Department of Corrections housed at the Kentucky State Penitentiary ("KSP"), filed a pro se complaint. Dunn practices the ancient, pre-Christian faith of Odinism, also known as Astaru. The Odinist faith is grounded in runic mysticism; its adherents aspire to the Nine Noble Virtues of courage, truth, honor, fidelity, hospitality, discipline, industriousness, self-reliance, and preservation. (Docket No. 1 at 6.) To realize such virtues, Odinist practitioners communicate with a number of deities. Various sacred objects are central to this practice, including runes used in connection with religious study and medallions depicting Thor's Hammer. (Docket No. 1 at 6-7.)

On May 28, 2012, Dunn requested permission from the KSP Chaplain to request a Thor's Hammer medallion. In response, the Chaplain explained that Dunn was free to order any of the Odinist medallions available in the Kentucky Department of Corrections ("KDC") vendor catalogues. (Docket No. 1 at 7.) Dunn then filed a grievance, alleging that the medallions available were unacceptable, as their designs featured Celtic artwork. (Docket No. 1 at 8.) In response, the institution explained that given KDC's interest in uniformity of materials available to inmates, Dunn could order only from the approved institutional vendors. (Docket No. 1 at 8-9.) The KSP warden upheld the Grievance Committee's decision, pointing to Correctional Policy and Procedures ("CPP") permitting only orders placed with approved vendors. (Docket No. 1 at 9) This conclusion was affirmed by the Commissioner of the KDC, who emphasized that other inmates had not complained about the quality of the medallions available from the approved vendor catalogues and that such medallions satisfied the standards of the Department's religious practice manual. (Docket No. 1 at 9.)

On July 25, 2012, Dunn filed an institutional grievance arguing that KSP failed to maintain a list of approved outside vendors in violation of the CPP. (Docket No. 1 at 10.) Lt. Raymond Vinson's response noted that the institution had three approved vendors. Vinson also emphasized that Dunn could petition the warden for consent to make a special purchase from an outside vendor. (Docket No. 1 at 11.) The Warden confirmed this information, and the decision was upheld by the KDC Commissioner. (Docket No. 1 at 12.) On November 7, 2012, Dunn utilized this alternative ordering method to place an order from a different source; at the time of his Complaint, Dunn's request had not yet been addressed. (Docket No. 1 at 12.)

On August 28, 2012, Dunn filed a grievance alleging that he was restricted from owning a set of personal rune stones. (Docket No. 1 at 13.) Although he acknowledged that the religious reference manual allowed possession of rune *cards* for religious observation, Dunn stated that he preferred to use stones or wood. (Docket No. 1 at 13.) Dunn's complaint was denied. (Docket No. 1 at 13.) Both levels of institutional appeal confirmed this denial. (Docket No. 1 at 13-14.)

Dunn now sues the Kentucky Department of Corrections and various prison officials in their official capacities under the private cause of action found in the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA)[1], seeking injunctive and monetary relief. Dunn alleges three specific counts. First, Dunn alleges that Defendants have not permitted him to purchase an appropriate Thor's Hammer, restricting such purchase to the only hammer for sale by the Union Supply Vendor. Dunn contends that this hammer is deficient, as it depicts Celtic symbolism not associated with Odinism. (Docket No. 1 at 7-8.) Second, Dunn asserts that Defendants have not permitted him to purchase a set of wooden rune stones necessary for observing his religious beliefs. (Docket No. 1 at 16.) Finally, Dunn generally asserts that he is being denied reasonable accommodations to practice his religious beliefs in violation of the Free Exercise Clause. (Docket No. 1 at 15.)

**Legal Standard**

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d

---

[1] RLUIPA concerns state and local restrictions on the religious exercise of institutionalized persons. § 2000cc-1 (RLUIPA § 3). Section 3 provides that "[n]o government shall impose a substantial burden on the religious exercise" of an institutionalized person unless the government demonstrates that the burden furthers "a compelling governmental interest" and does so by "the least restrictive means of furthering" that interest. § 2000cc-1(a). Section 3 applies "in any case" in which "the substantial burden is imposed in a program or activity that receives Federal financial assistance." § 2000cc-1(b)(1). RLUIPA provides an express private cause of action for "appropriate relief against a government," § 2000cc-2(a), including, *inter alia*, states, their instrumentalities and officers, and persons acting under color of state law. § 2000cc-5(4)(A).

795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; he must present evidence on which the trier of fact could reasonably find for him. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), abrogated on other grounds by *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012).

**Analysis**

I. **Free exercise claim**

Several essential principles guide the Court's analysis of Dunn's free exercise claim. Importantly, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Dunn's First Amendment protections persist despite his incarceration, including its edict that no law shall prohibit the free exercise of religion. *See Cruz v. Beto*, 405 U.S. 319 (*per curiam*).

However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, and a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Moreover, "[b]ecause the problems of prisons in America are complex and intractable, and because courts are particularly ill equipped to deal with these problems, [the Supreme Court] generally ha[s] deferred to the judgments of prison officials in upholding these regulations against constitutional challenge." *Shaw v. Murphy*, 532 U.S. 223, 229 (2001) (internal quotation marks and citations omitted).

4

Under 42 U.S.C. § 1983, "[a] prisoner alleging that the actions of prison officials violate his religious beliefs must show that the belief or practice asserted is religious in the person's own scheme of things and is sincerely held." *Barhite v. Caruso*, 377 Fed. App. 508, 510 (6th Cir. 2010) (quoting *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (citation and internal quotation marks omitted)). An inmate's showing of a sincere belief is a threshold matter; only after the inmate shows that his religion requires the practice at issue will the Court consider the validity of the prison's restraints. *Id.* (citing *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007) (explaining that the first requirement in a § 1983 free exercise claim is the plaintiff's showing that the prison's action "substantially burdened his sincerely-held religious beliefs."); *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d. Cir. 2006) ("The prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.")).

Here, Dunn complains that KSP has restricted him to ordering a Thor's Hammer medallion from a single vendor which offers only "one insignificant hammer" that he characterizes as deficient, as it depicts Celtic knotwork that is unrelated to Odinist doctrine. (Docket No. 1 at 7-8.) He further contends that the medallion depicting the hammer consists of gold plating over lead and is of poor quality. (Docket No. 1 at 7-8.) However, Dunn makes no showing that the artwork on the medallions carries any religious significance raising a First Amendment issue. The Supreme Court has observed that, in order to qualify as "a 'religious' belief or practice entitled to constitutional protection, an alleged belief must not be "merely a matter of personal preference, but one of deep religious conviction, shared by an organized group, and intimately related to daily living." *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972). Beliefs that are "philosophical and personal rather than religious . . . [do] not rise to the demands of the Religion Clauses." *Id.* at 216. Dunn raises no such evidence.

Moreover, the Court determines that Defendants' objective in providing inmates with a uniform selection of medallions is reasonably related to a legitimate penological interest. *Turner v. Safely*, 482 U.S. 78, 84 (1987). The Supreme Court has held that regulations infringing upon an inmate's constitutional rights, including that of the free exercise of religion, are subject to rational basis review and

5

evaluated under a four-part test. First, "there must be a 'valid rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Id.* (quoting *Block v. Rutherford*, 486 U.S. 576, 586 (1984)). Second, in determining whether a restriction is reasonable, the Court must consider "whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 90. Third, the Court must evaluate "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* Finally, the Court instructed "the absence of ready alternatives is evidence of the reasonableness of a prison regulation," but "[b]y the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable." *Id.* (citation omitted). As the Sixth Circuit has noted, "a trial court is not required to weigh evenly, or even consider explicitly, each of the four *Turner* factors." *Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999) (citations omitted). Rather, "[t]he four *Turner* factors are . . . simply 'relevant' to the ultimate inquiry a court must undertake 'when a prison regulation impinges on inmates' constitutional right': determining whether a prison regulation is 'reasonably related to legitimate penological interests.'" *Id.* (quoting *Turner*, 482 U.S. at 89)).

Applying the *Turner* test to the facts of Dunn's case, the Court finds that KSP's limiting the available selection of medallions to those in the vendor catalogue was related to a legitimate penological interest. First, KSP has an interest in ensuring that items available to inmates maintain some degree of uniformity in furtherance of institutional security and discipline. *See Bell v. Wolfish*, 441 U.S. 520, 546-47 (holding that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of . . . convicted prisoners."). Second, Defendants presented Dunn and inmates who shared his faith with an alternative means of exercising his right; specifically, Dunn had access to a special procedure to obtain institutional permission to purchase any medallion, a procedure he initiated. Finally, the Court notes that accommodation of Dunn alone could foster resentment among other KSP inmates, potentially causing unrest and increased security risks. Therefore, the Court finds that any limitations placed on the

6

medallions available to Dunn were related to a legitimate penological interest in safety and security. Accordingly, these limitations did not violate Dunn's right to free exercise.

For similar reasons, the Court finds that KSP's prohibition of rune stones does not violate Dunn's First Amendment rights. Dunn admits that he has access to paper runes. The record reflects that the religious significance of the rune symbols persists regardless of the item on which they are written, be they stones or cards. (Docket No. 1-1 at 5.) Because paper runes are apparently acceptable in Odinist ceremonies, Dunn has not demonstrated that his practice has been substantially burdened. *See Cutter*, 544 U.S. at 715. Therefore, Defendants are entitled to summary judgment on this claim.

Furthermore, Dunn sues the KDC and several state employees in their official capacity. Because he sues the employees in their official capacity, the claims brought against them are deemed claims against the Commonwealth of Kentucky itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). To state a § 1983 claim, a plaintiff must allege that a "person" acting under color of state law deprived him of a right secured by the Constitution or federal law. *See* § 1983. States, state agencies, and state officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, Dunn's claims for money damages from the state and these state officers in their official capacities fail to allege cognizable claims under § 1983. Moreover, Defendants are immune from monetary damages under the Eleventh Amendment, which specifically prohibits federal courts from entertaining suits for money damages brought directly against a state or its agencies. *Puerto Rico Aqueduct & Sewer Auth. V. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144-45 (1993).

## II.     RLUIPA claim

The RLUIPA embraces similar considerations, as it "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and

7

accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). In furtherance of this aim, the Act prohibits the government from imposing

> a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person is in furtherance of a compelling governmental interest[,] and is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). A prison official's action is a substantial burden "'when that action forced an individual to choose between following the precepts of [his] religion and forfeiting benefits or when the action in question placed substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Hayes v. Tennessee*, 424 Fed. Appx. 546, 554-55 (6th Cir. 2011) (quoting *Barhite v. Caruso*, 377 Fed. Appx. 508, 511 (6th Cir. 2010) (internal quotation marks omitted)). "However, 'prison security is a compelling state interest' and 'deference is due to institutional officials' expertise in this area.'" *Hayes*, 424 Fed. Appx. at 554 (quoting *Cutter*, 544 U.S. at 725 n.13). The RLUIPA does not vanquish a correctional facility's "need to maintain order and safety" in favor of the "accommodation of religious observances." *Cutter*, 544 U.S. at 722.

> If a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of section 2000cc . . . the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion.

42 U.S.C. § 2000cc-2.

As to the second prong—the issue of a "substantial burden" on Dunn's religious practice—Dunn claims that KSP's denial of his request for a new Thor's Hammer medallion and for a set of wooden rune stones, rather than the rune cards permitted by KSP, constitute a substantial burden. (Docket No. 1 at 13.) An action serves as a substantial burden "when that action force[s] an individual to choose between 'following the precepts of [his] religion and forfeiting benefits' or when the action in question place[s]

8

'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Living Water Church of God v. Charter Twp. Of Meridian*, 258 Fed. Appx. 729, 734 (6th Cir. 2007) (quoting *Sherbert v. Verner*, 374 U.S. 398, 404 (1963), and *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 717-19 (1981)).

Defendants argue that the items Dunn requests are not essential to his religious practice, but are instead matters of personal preference. Attached to Dunn's complaint is a Federal Bureau of Prisons reference document entitled "Inmate Religious Beliefs and Practices." (Docket No. 1-1.) This document describes the beliefs and practices encompassed by the Odinist religion, as well as the personal religious items associated with the faith, including a "Thor's Hammer medallion and chain." (Docket No. 1-1 at 7-8.) Although "rune cards . . . used in identifying powers available for growth, protection, and healing" are listed, the document notes that "[r]une stones . . . are not authorized personal property." (Docket No. 1-1 at 7-8.) Additionally, Dunn has made no showing that the available medallions are inadequate, nor that his observance is burdened by the use of medallions with Celtic knotwork; the manual states no specific design or decoration requirements for the medallion. Dunn continues to enjoy reasonable opportunities to practice the required regular rituals of the Odinist faith as it is described. Therefore, there is no basis to alter or amend the religious manuals.

### III.    Equal protection claim

Finally, the Court will consider Dunn's complaint regarding KSP's list of approved vendors. According to Dunn's complaint, the institution provides three approved vendors from whom religious supplies may be ordered. KDC policy provides inmates who wish to order items not found in the inmate canteen with a mechanism to submit special order requests. This "special vendor policy" is available to all inmates, regardless of their religion or ethnicity.

Although Dunn's argument appears to be that he is being denied equal protection, he has not demonstrated that Defendants treated similarly situated individuals in a disparate manner. *See Buchanan*

*v. City of Bolivar*, 99 F.3d 1352, 1360 (6th Cir. 1996). To raise such a claim, Dunn would have to show that "similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest." *Barhite*, 377 Fed. Appx. at 510 (quoting *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003). He has failed to do so. Dunn alleges that inmates of other religious faiths are provided with more desirable options but offers no evidence to support this allegation. Moreover, there is no indication that KSP's selection of vendors was designed to preference one group of individuals over another. Instead, the response to Dunn's grievance suggests that the selection was made with an eye toward uniformity and standardization. Therefore, to the extent that Dunn's complaint raises an equal protection claim, such claim lacks merit.

**CONCLUSION**

For the reasons explained above, the Court will GRANT Defendants' Motion for Summary Judgment, (Docket No. 21). An appropriate order will issue concurrently.